UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

HANESBRANDS INC. and HBI BRANDED
APPAREL ENTERPRISES, LLC,

                             Plaintiffs,

         - against -

METRO SPORTS INC. (d/b/a PLAYERS SPORTS,
d/b/a HOT DOT, d/b/a HIP HOP SPORTSWEAR);
HOT DOT FASHION, INC.; HIP HOP
SPORTSWEAR INC.; MICHAEL FASHIONS INC.
(d/b/a MICHAEL FASHION); LONDON BOY:
SPORTSWEAR, LTD. (d/b/a LONDON BOY);
TRANDZ N.Y., CORP. (d/b/a OCTANE); OCTANE:
NYC INC. (d/b/a OCTANE); FLASH SPORTS, INC.;
104TH ST. FASHION INC. (d/b/a 104 STREET:
FASHIONS, d/b/a 104 FASHIONS); F.T.C. FASHION;
various JOHN and JANE DOES, and XYZ:
COMPANIES (UNIDENTIFIED),

                          Defendants.

------------------------------------------------------------------ x

: Civil Action No.

: **08 CV 0545**

: Complaint

: Jury Trial Demanded

JUDGE MARRERO

JAN 2 2 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

    Plaintiffs Hanesbrands Inc. and HBI Branded Apparel Enterprises, LLC, state the
following for their Complaint against Defendants.

### SUBSTANCE OF THE ACTION

    1.    All of the claims asserted herein arise out of and are based on Defendants'
unlawful promotion, distribution, and sale of counterfeit sweatshirts that use the Champion®
trademarks and logos (hereinafter "CHAMPION Marks") and the Super Hood® trademark
(hereinafter "SUPER HOOD Mark").  Plaintiffs allege claims for federal trademark

counterfeiting and infringement under Sections 32 and 34 of the United States Trademark Act of

1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1114, 1116; unfair competition, false

designation of origin, and false description under Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a); dilution and tarnishment of HBI's trademarks under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(c); trademark infringement and unfair competition under New York General

Business Law § 360-o and common law; dilution and injury to business reputation under New

York General Business Law 360-*l*; deceptive acts and practices pursuant to New York General

Business Law §§ 349 and 350 and common law; and common law unjust enrichment. Plaintiffs

seek an order pursuant to Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d), authorizing *ex*

*parte* seizure of the counterfeit and infringing goods and Defendants' business records

identifying Defendants' sources and customers. In addition, Plaintiffs seek an *ex parte*

temporary restraining order and preliminary, as well as permanent injunctive relief, to prevent

the sale, shipment, and further distribution of the counterfeit and infringing goods, as well as an

accounting of profits, and treble damages or statutory damages of up to $1,000,000 per

counterfeit mark per type of goods sold or distributed as authorized by Section 35(c) of the

Lanham Act, 15 U.S.C. § 1117(c), as well as recovery of attorneys' fees and other relief

authorized by the Lanham Act and applicable state law.[1]

<u>JURISDICTION AND VENUE</u>

2.      This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15

U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C.

§§ 1331, 1338(a) & (b). Supplemental jurisdiction exists over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367.

---

[1] Plaintiffs do not seek an *ex parte* preliminary injunction and permanent injunction.

3.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants do business in the State of New York and in this judicial district, have committed the tortious acts described herein in the State of New York and in this judicial district, or have otherwise established contacts with the State of New York and this judicial district sufficient to make the exercise of personal jurisdiction proper.

4.      Venue is proper under Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this district and, upon information and belief, Defendants either reside or may be found here.

<u>THE PARTIES</u>

5.      Plaintiff Hanesbrands Inc. ("Hanesbrands") is a Maryland corporation with a place of business at 1000 East Hanes Mill Road, Winston-Salem, North Carolina 27105.

6.      Plaintiff HBI Branded Apparel Enterprises, LLC ("HBI") is a Delaware limited liability company with a place of business at 1000 East Hanes Mill Road, Winston-Salem, North Carolina 27105.   HBI is the owner of the federally-registered CHAMPION Marks and the federally-registered SUPER HOOD Mark.

7.      HBI is a wholly-owned subsidiary of Hanesbrands.   In addition to being the parent company of HBI, Hanesbrands is a non-exclusive licensee, in the United States, of the trademarks owned by HBI, that are identified below.  (For convenience, and unless the context indicates otherwise, the above-named Plaintiffs, together with any relevant corporate subsidiaries, affiliates, and related companies, as well as the predecessors-in-interest to the trademarks that are the subject of this action, will hereinafter be referred to collectively as "Plaintiffs" and shall refer to either HBI, Hanesbrands, or both depending on the context.)

8.     Upon information and belief, Defendant Metro Sports, Inc. ("Metro Sports") is a New York corporation with places of business at 565 West 145th Street, Manhattan, New York 10031; 2946 Third Avenue, Bronx, New York 10455; 3542 Broadway, Manhattan, New York 10031; and 118 West 125th Street, Manhattan, New York, 10027. Upon information and belief, Metro Sports is related to or doing business as Players Sports and Hot Dot Sportswear at 3542 Broadway, Manhattan, New York 10031; and Hip Hop Sportswear at 118 West 125th Street, Manhattan, New York 10027 and 2946 Third Avenue, Bronx, New York 10455.

9.     Upon information and belief, Defendant Hot Dot Fashion, Inc. is a New York corporation with a place of business at 3542 Broadway, Manhattan, New York 10031.

10.     Upon information and belief, Defendant Hip Hop Sportswear, Inc. is a New York corporation, with a place of business at 565 West 145th Street, Manhattan, New York 10031.

11.     Upon information and belief, Defendant Michael Fashions Inc. d/b/a as Michael Fashion is a New York corporation with a place of business at 2936 Third Avenue, Bronx, New York 10455.

12.     Upon information and belief, Defendant London Boy Sportswear, Ltd. d/b/a London Boy is a New York corporation with a place of business at 2908 Third Avenue, Bronx, New York 10455.

13.     Upon information and belief, Defendant Trandz N.Y., Corp. is a New York corporation with a place of business at 560 Melrose Avenue, Bronx, New York 10455.

14.     Upon information and belief, Defendant Octane NYC Inc. is a New York corporation with a place of business at 560 Melrose Avenue, Bronx, New York 10455.

15.     Upon information and belief, Defendant Flash Sports, Inc. is a New York corporation with a place of business at 16 West 125th Street, Manhattan, New York 10027.

16.    Upon information and belief, Defendant 104th St. Fashion, Inc. d/b/a 104 Street Fashions, d/b/a 104 Fashions maintains a place a business at 1887 Third Avenue, Manhattan, New York 10029.

17.    Upon information and belief, Defendant F.T.C. Fashion ("FTC") maintains a place of business at 3663 Broadway, Manhattan, New York 10031.

18.    Upon information and belief, various John and Jane Does as well as unidentified business entities, the identities of which will be determined through discovery, conduct business and traffic in counterfeit goods bearing Plaintiffs' federally-registered trademarks.

<u>FACTS COMMON TO ALL CLAIMS</u>

A.    <u>Plaintiffs' Trademarks</u>

19.    Plaintiffs, their affiliated companies, predecessors-in-interest, authorized licensees and authorized subcontractors, are engaged in the design, manufacture, marketing, advertising, distribution, and sale in interstate commerce of apparel, including sweatshirts.

20.    Beginning at least as early as 1918 the predecessors-in-interest to Plaintiffs adopted and began using various trademarks incorporating the CHAMPION trademark. Since that time, Plaintiffs or their predecessors-in-interest have continuously used trademarks incorporating the CHAMPION trademark both standing alone or in connection with the distinctive "C" logo (see below) in interstate commerce in the United States for the purpose of identifying Plaintiffs' apparel products and for distinguishing goods from the goods of others. For ease of reference, these trademarks are referred to collectively herein as the "CHAMPION Marks" (which excludes the SUPER HOOD Mark). The CHAMPION Marks have been used in connection with sweatshirts at least as early as the mid-1960's.

21.    Beginning at least as early as August 2002, Plaintiffs adopted and began using the SUPER HOOD Mark. Since that time, Plaintiffs have continuously used the SUPER HOOD Mark in interstate commerce for the purpose of identifying Plaintiffs' apparel products and for distinguishing goods from the goods of others. (For convenience, the CHAMPION Marks and SUPER HOOD Mark are referred to herein as the "CHAMPION and SUPER HOOD Marks.")

22.    In connection with its use of the CHAMPION Marks, HBI owns numerous federal trademark registrations and all of the goodwill associated therewith in connection with a wide array of goods and services, including, *inter alia*, sweatshirts.

23.    In addition, HBI owns a federal trademark registration for the SUPER HOOD Mark and all of the good will associated therewith in connection with a sweatshirts, sweatpants, and jackets.

24.    The registrations pertinent to this action, along with the initial registration for CHAMPION, are as follows:

| MARK | REGISRATION NO. | GOODS |
|---|---|---|
| **CHAMPION** | 274,178 (registered Aug. 29, 1930) | Hosiery |
| C | 1,127,251 (registered Dec. 4, 1979) | Laundry bags, also suitable for use as sundry bags; pennants and banners; Men's and Boys' Football Uniforms, Athletic Shorts, Men's Neckties, Men's Scarves, Football Jerseys, Jackets, Sweat Pants, **Sweat Shirts**, Warm Up Shirts, Warm Up Pants, Sweat Suits, T-Shirts, One Piece and Two-Piece Physical Education Uniforms, Pullovers, Tank Tops, Polo Shirts, Hats, Caps, Baby Bibs, Baseball Shirts; and Heat |

| | | |
|---|---|---|
| | | Transfer Appliques to be applied to clothing |
| *Champion* | 1,323,337 (registered Mar. 5, 1985) | Athletic and Physical Education Uniforms – Namely T-Shirts, Knit Sport Shirts, Athletic Shorts, **Sweat Shirts**, Sweat Pants, Warm-Up Suits, Jackets and Sweaters |
| *Champion* | 1,915,092 (registered Aug. 29, 1995) | Clothing, namely hooded and unhooded jerseys, bathrobes, sleepwear, cover-ups, bras, parkas, aerobic wear, namely tops and bottoms, swimwear, pants, shorts, athletic uniforms, physical education uniforms, T-shirts, knit sports shirts, athletic shorts, **sweatshirts**, sweatpants, warm-up suits, jackets, sweaters, vests, wind-resistant clothing, namely tops and bottoms, replica, athletic jerseys, singlets, tights, belts, headbands, wristbands, underwear, and undershirts |
| **CHAMPION** | 2,319,994 (registered Feb. 22, 2000) | Physical education uniforms, athletic uniforms, **sweatshirts**, sweatpants, sweaters, T-shirts, socks, shorts, pants, jerseys, bathrobes, sleepwear, cover-ups, bras, parkas, tops and bottoms for use in aerobics, shirts, warm-up suits, jackets, vests, wind resistant pants and jackets, replica athletic jerseys, singlets, tights, belts, headbands, wristbands, underwear, hats, caps, and tank tops |
| **SUPER HOOD** | 3,140,617 (registered Sep. 5, 2006 on the Supplemental Register) | **Sweatshirts**, sweatpants, jackets |

25.    Copies of the Registration Certificates for the above-listed federal registrations are attached hereto as Exhibits A-F. These registrations are all valid, subsisting, uncancelled, unrevoked, and in full force and effect. Registration Numbers 1,323,337; 1,915,092 and 2,319,994 are incontestable pursuant to 15 U.S.C. § 1065.

26.    The registration of the CHAMPION Marks constitutes *prima facie* evidence of their validity and conclusive evidence of Plaintiffs' exclusive rights to use the CHAMPION Marks in commerce in connection with the goods named therein, and commercially related goods. The registration of the CHAMPION Marks also constitutes constructive notice to the Defendants of Plaintiffs' ownership and exclusive rights in the CHAMPION Marks.

27.    As noted above, sweatshirts are among the goods for which HBI has registered and licensed the CHAMPION and "C" logo trademarks and the SUPER HOOD Mark.

28.    Hanesbrands' products bearing the CHAMPION and SUPER HOOD Marks are sold throughout the United States in a wide variety of retail stores.

29.    In accordance with 15 U.S.C. § 1111, the CHAMPION and SUPER HOOD Marks are, and have been, displayed on Hanesbrands' products, or on the packaging, marketing, or advertising materials, for such products, and are and were accompanied by the notation "®" to provide notice that the CHAMPION and SUPER HOOD Marks are federally registered.

30.    Plaintiffs maintain strict quality control standards for all products manufactured under the CHAMPION and SUPER HOOD Marks.

31.    Hanesbrands has extensively advertised and promoted sweatshirts sold under the CHAMPION and SUPER HOOD Marks throughout the United States by means of various

media, including, without limitation, television, the Internet, newspapers, magazines, and direct mail.

32.     As a consequence of Hanesbrands' long and continuous use of the CHAMPION Marks throughout the United States and worldwide, and due to the significant investment of time, money, and efforts, widespread sales, and the high quality of Hanesbrands' products sold in connection with the CHAMPION and SUPER HOOD Marks, the CHAMPION and SUPER HOOD Marks have acquired enormous value and have become extremely well-known to the consuming public and trade as identifying and distinguishing the source of Plaintiffs' products exclusively and uniquely.

33.     Because of the great public acceptance of Plaintiffs' CHAMPION products, the CHAMPION Marks and trade name have come to represent an enormous goodwill and are famous not only in the United States but throughout the world, thereby entitling the CHAMPION Marks to the greater protection afforded marks of such international distinction under both the laws of the United States and international treaties, such as the Paris Convention and the Trade-Related Aspects of Intellectual Property Rights Agreement (the "TRIPS Agreement"), both of which were entered into by the United States.

B.     Defendants' Unlawful Conduct

34.     Upon information and belief, Defendants traffic in counterfeit apparel bearing counterfeits of Plaintiffs' CHAMPION and SUPER Hood Marks, including, without limitation, sweatshirts (the "Counterfeit Products").

35.     Upon information and belief, Defendants, without authorization or license from Plaintiffs, have knowingly and willfully used, reproduced, or copied Plaintiffs' CHAMPION and SUPER HOOD Marks in connection with their manufacturing, distributing, exporting,

importing, shipping, advertising, offering for sale, selling, and facilitating the sale of Counterfeit

Products in interstate, intrastate, and international commerce, that are counterfeit and infringing

copies of Plaintiffs' products.

36.    For purposes of comparison, photographs of a Counterfeit Product and an

authentic SUPER HOOD® sweatshirt is produced below:[2]

 

37.    Upon information and belief, Defendants have manufactured the Counterfeit

Products without authorization from Plaintiffs, or purchased the Counterfeit Products from a

source or sources that are not authorized or licensed by Plaintiffs to manufacture, offer for sale,

or sell the products bearing the CHAMPION or SUPER HOOD Marks.

---

[2] To ease the Court's examination, examples of a counterfeit product and an authentic sweatshirt accompany the
Affidavit of Richard Heller as Exhibits D (counterfeit) and E (authentic) submitted in support of Plaintiffs' Motion
for a Temporary Restraining Order (*Ex Parte*), Seizure Order (*Ex Parte*), Preservation Order (*Ex Parte*), Order to
Show Cause Why A Preliminary Injunction Should Not Issue, and Secrecy Order (*Ex Parte*), filed herewith.

38.    The Counterfeit Products are not genuine Plaintiffs' products. Plaintiffs did not manufacture, inspect, or package the Counterfeit Products, and did not approve the Counterfeit Products for sale or distribution.

39.    Defendants are not authorized by Plaintiffs to manufacture, advertise, distribute, export, import, ship, sell, offer to sell, or facilitate the sale of any products bearing Plaintiffs' CHAMPION or SUPER HOOD Marks that are not authentic products.

40.    Defendants' aforesaid use of Plaintiffs' CHAMPION and SUPER HOOD Marks in connection with the advertising, marketing, distribution, import, export, shipping, offering for sale, sale, and facilitation of the sale of Counterfeit Products have already caused, and in the future are likely to cause, confusion among potential customers who will be deceived into believing that Defendants' Counterfeit Products are authentic products, thus harming the consuming public and irreparably harming Plaintiffs' valuable reputation and goodwill.

41.    Defendants' aforesaid conduct is occurring, among other places, in New York City, in the State of New York, and within this judicial district.

42.    The aforesaid conduct is causing Plaintiffs irreparable harm, for which there is no adequate remedy at law.

## COUNT I

## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT (15 U.S.C. §§ 1114, 1116)

43.    Plaintiffs repeat and reallege Paragraphs 1 through 42 as if fully set forth herein.

44.    Without authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the CHAMPION and SUPER HOOD Marks, Defendants have manufactured, shipped, offered for sale, sold, or facilitated the sale of Counterfeit Products bearing marks that are reproductions, counterfeits, copies, or colorable imitations of Plaintiffs'

CHAMPION and SUPER HOOD Marks to the consuming public in direct competition with the sale of Plaintiffs' authentic products, in or affecting interstate commerce, in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§ 1114, 1116.

45.    Defendants' use of reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' CHAMPION and SUPER HOOD Marks is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and cause the consuming public to believe that Defendants' goods have been manufactured or approved by Plaintiffs or that Defendants are legitimately connected with Plaintiffs or authorized by Plaintiffs to use the CHAMPION or SUPER HOOD Marks.

46.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, their goodwill and reputation, and will continue to damage Plaintiffs and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

47.    In addition to injunctive relief, Plaintiffs are entitled to recover actual damages, Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial. Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b). Plaintiffs reserve the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

48.    Plaintiffs are further entitled to an Order directing that all items in the possession, custody, or control of Defendants bearing reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' registered marks be delivered up to Plaintiffs and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT II

## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a)

49.    Plaintiffs repeat and reallege Paragraphs 1 through 48 as if fully set forth herein.

50.    Defendants' unauthorized use of reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' CHAMPION and SUPER HOOD Marks is likely to cause confusion, to cause mistake, or to deceive the consuming public and the trade as to the origin, sponsorship, or approval of Defendants' products.    As a result of Defendants' unauthorized uses of reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' CHAMPION and SUPER HOOD Marks in connection with Counterfeit Products, the consuming public and trade is likely to believe that Defendants' goods have been manufactured or approved by Plaintiffs, and such use falsely represents Defendants as being legitimately affiliated, connected, or associated with or authorized by Plaintiffs and places Plaintiffs' valuable and hard-earned reputation and goodwill in the hands of the Defendants in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, their goodwill and reputation, and will continue to damage Plaintiffs and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

52.    In addition to injunctive relief, Plaintiffs are entitled to recover actual damages, Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial.  Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b).  Plaintiffs' reserve the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

13

53.    Plaintiffs are further entitled to an Order directing that all items in the possession, custody, or control of Defendants bearing reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' registered marks be delivered up to Plaintiffs and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT III

### FEDERAL TRADEMARK DILUTION
### (15 U.S.C. 1125(c))

54.    Plaintiffs repeat and reallege Paragraphs 1 through 53 as if fully set forth herein.

55.    Plaintiffs' CHAMPION Marks are "famous" pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(1), and have been famous marks prior to Defendants' conduct as alleged herein.

56.    The CHAMPION Marks have acquired secondary meaning in the minds of the consuming public and trade who recognizes the CHAMPION Marks as identifying the quality and value of Plaintiffs' products, identifying CHAMPION branded products as coming from a single source and distinguishing Plaintiffs' products from products manufactured, marketed, or distributed by other sources.  As such, the CHAMPION Marks have developed a valuable reputation in the minds of the consuming public and trade.

57.    Defendants' manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales in commerce of the Counterfeit Products has diluted and continues to dilute the distinctive quality of the CHAMPION Marks, and was done with the willful intent to trade on Plaintiffs' reputation and goodwill.

58.    Upon information and belief, Defendants' unauthorized use of the CHAMPION Marks on or in connection with the Counterfeit Products was done with full notice and

knowledge that such manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales were not authorized or licensed by Plaintiffs.

59.    Defendants' conduct constitutes a knowing and willful violation of Plaintiffs' rights under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

60.    Defendants' conduct is causing immediate and irreparable injury to Plaintiffs, their goodwill and reputation, and will continue to damage Plaintiffs and deceive the public unless temporarily, preliminarily, and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

61.    In addition to injunctive relief, Plaintiffs are entitled to recover actual damages, Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117 in an amount to be determined at trial.  Any such damages and awards should be trebled pursuant to 15 U.S.C. § 1117(b).  Plaintiffs' reserve the right to seek statutory damages pursuant to 15 U.S.C § 1117(c).

62.    Plaintiffs are further entitled to an Order directing that all items in the possession, custody, or control of Defendants bearing reproductions, counterfeits, copies, or colorable imitations of Plaintiffs' registered marks be delivered up to Plaintiffs and destroyed pursuant to 15 U.S.C. § 1118.

## COUNT IV

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION PURSUANT TO N.Y. GEN. BUS. LAW § 360-o AND COMMON LAW

63.    Plaintiffs repeat and reallege Paragraphs 1 through 62 as if fully set forth herein.

64.    Defendants' manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales in commerce of the Counterfeit Products are, and unless enjoined, will continue to constitute trademark infringement and unfair competition in

violation of the common law of the State of New York, N.Y. Gen. Bus. Law § 360-o, and similar statutory and common laws of other states.

65.    Upon information and belief, Defendants' unauthorized use of the CHAMPION and SUPER HOOD Marks on or in connection with the Counterfeit Products was done with full notice and knowledge that such manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales were not authorized or licensed by Plaintiffs.

66.    Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damages as a result of Defendants' conduct in an amount to be determined at trial.

**COUNT V**

**DILUTION AND INJURY TO BUSINESS REPUTATION PURSUANT TO
N.Y. GEN. BUS. LAW § 360-*l***

67.    Plaintiffs repeat and reallege Paragraphs 1 through 66 as if fully set forth herein.

68.    Defendants' manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales in commerce of the Counterfeit Products have, and unless enjoined, will continue to injure or are likely to injure Plaintiffs' business reputation and dilute the distinctive quality of the CHAMPION Marks in violation of N.Y. Gen. Bus. Law § 360-*l*.

69.    Upon information and belief, Defendants' unauthorized use of the CHAMPION and SUPER HOOD Marks on or in connection with the Counterfeit Products was done with full notice and knowledge that such manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales were not authorized or licensed by Plaintiffs.

70.    Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damages as a result of Defendants' conduct in an amount to be determined at trial.

## COUNT VI

## DECEPTIVE ACTS AND PRACTICES PURSUANT TO N.Y. GEN. BUS. LAW §§ 349 AND 350 AND COMMON LAW

71.    Plaintiffs repeat and reallege Paragraphs 1 through 70 as if fully set forth herein.

72.    Defendants' manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales in commerce of the Counterfeit Products are, and unless enjoined, will continue to constitute deceptive acts and practices in violation of the common law of the State of New York, N.Y. Gen. Bus. Law §§ 349 and 350, and similar statutory or common laws of other states.

73.    Upon information and belief, Defendants' unauthorized use of the CHAMPION and SUPER HOOD Marks on or in connection with the Counterfeit Products was done with full notice and knowledge that such manufacture, import, export, advertisement, distribution, shipment, offer for sale, sale, and facilitation of sales were not authorized or licensed by Plaintiffs.

74.    Plaintiffs have no adequate remedy at law, and are suffering irreparable harm and damages as a result of Defendants' conduct in an amount to be determined at trial.

## COUNT VII

## COMMON LAW UNJUST ENRICHMENT

75.    Plaintiffs repeat and reallege Paragraphs 1 through 74 as if fully set forth herein.

76.    Defendants have been and will continue to be unjustly enriched as a result of their unauthorized use of the CHAMPION and SUPER HOOD Marks.

77.    By the acts described above, Defendants have retained revenues which they were not equitably or legally entitled, and were thereby unjustly enriched at Plaintiffs' expense in violation of the common law of the State of New York.

78.    As a result of the foregoing, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs request the following relief:

1.    For judgment that:

a.    Defendants have engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

b.    Defendants have used counterfeit marks in violation of Section 34 of the Lanham Act, 15 U.S.C. § 1116;

c.    Defendants have engaged in unfair competition, false designation of origin, and trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

d.    Defendants have engaged in trademark infringement dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

e.    Defendants have engaged in trademark infringement and unfair competition in violation of the common law of the State of New York and N.Y. Gen. Bus. Law § 360-o;

f.    Defendants have diluted and injured Plaintiffs' business reputation in violation of N.Y. Gen. Bus. Law § 360-*l*;

      g.     Defendants have engaged in deceptive acts and practices in violation of the common law of the State of New York and N.Y. Gen. Bus. Law §§ 349 and 350;

      h.     Defendants have been unjustly enriched; and

      i.     Defendants acts of infringement, counterfeiting, dilution, unfair competition was willful.

2.     That a temporary restraining order (*ex parte*) and preliminary and permanent injunctions be issued enjoining Defendants, any of their respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors, and assigns, and all persons in concert or participations with any of them, and any entity owned or controlled by any of the Defendants, who receives actual notice of the order by personal service or otherwise, from:

      a.     using any of Plaintiffs' CHAMPION and SUPER HOOD Marks, including, but not limited those identified above, or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names in connection with any goods or services or in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, dissemination, or distribution of any goods;

      b.     processing, packaging, importing, or transporting any product that is not a genuine product of Plaintiff bearing any of Plaintiffs' trademarks or trade names or any mark that is a simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names;

c.      using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act which can, or is likely to, lead members of the consuming public or trade to believe that Defendants are associated with Plaintiffs or that any product imported, manufactured, distributed, or sold by the Defendants is in any manner associated or connected with Plaintiffs, or is authorized, licensed, sponsored, or otherwise approved by Plaintiffs;

d.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (c) above, or any other activity that consists of or contributes to the sale of counterfeit or infringing products bearing any of Plaintiffs' trademarks or trade names, including but not limited to, the CHAMPION and SUPER HOOD Marks.

3.      That an *ex parte* order be issued pursuant to 15 U.S.C. § 1116(d) for Federal or other law enforcement officers to seize the counterfeit products as described herein from the locations set forth in the memorandum and affidavits submitted herewith, as supplemented from time-to-time, along with a protective order pursuant to 15 U.S.C. § 1116(d)(7), and that the counterfeit products be taken into the custody of Plaintiffs, as agents of the Court, until such later order directing their destruction.

4.      That the Defendants, at their own expense, recall any and all products that bear any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names from any distributors, retailers, vendors, or others to

whom the Defendants have distributed or sold such products, and that such recall notices and other actions be taken within five (5) days after service of judgment with notice of entry thereof.

5.      That Defendants deliver up to Plaintiffs' attorney for destruction, within five (5) days after service of judgment with notice of entry thereof, all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in their possession or under their control or (b) recalled by the Defendants pursuant to any order of the Court or otherwise, incorporating any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names, and all plates, molds, matrices, and other means of making the same, and that Plaintiff be permitted to destroy all such goods without compensation to any of the Defendants.

6.      That Defendants preserve all records (including electronically stored information) and other documents concerning all transactions relating to their acquisition, import, purchase, or sale of any goods bearing or including any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names, and that all such materials be made available to Plaintiffs for review, inspection, and copying on Plaintiffs' request.

7.      That Defendants provide Plaintiffs with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the source of all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names, including all manufactures, distributors, or suppliers.

8.      That Defendants provide Plaintiffs with the names, addresses, and all other contact information in their possession (e.g., telephone numbers, fax numbers) for the customers

who purchased all products that bear or include any simulation, reproduction, copy, colorable imitation, or confusingly similar variation of any of Plaintiffs' trademarks or trade names, including all manufactures, distributors, or suppliers.

9.      That Defendants shall file with the Court and serve upon Plaintiffs' counsel within thirty (30) days after service of judgment with notice of entry thereof upon them a report in writing under oath, setting forth in detail the manner and form in which they have complied with the all of the above.

10.      That each Defendant account for and pay over to Plaintiffs three times the profits realized by each Defendant from its infringement and dilution of Plaintiffs' trademarks and trade names and from its unfair competition with Plaintiffs.

11.      That Plaintiffs be awarded their actual damages, trebled pursuant to 15 U.S.C. §§ 1117(a) & (b) and N.Y. Gen. Bus. Law § 349-h, or, if Plaintiffs elect, statutory damages as the Court considers just, up $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c), arising out of Defendants' acts of willful trademark infringement and counterfeiting.

12.      That Plaintiffs be awarded interest, including pre-judgment interest, on the foregoing sums in accordance with 28 U.S.C. § 1961.

13.      That Plaintiffs be awarded their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C.§ 1117(a), N.Y. Gen. Bus. Law § 349-h, and other applicable laws.

14.      That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        January 22, 2008

MORGAN & FINNEGAN LLP

By: _____
Gerald A. Haddad
Joseph Colin Foley
Danielle Tully
Three World Financial Center
New York, New York  10281-2101
Telephone: (212) 415-8700

*Of Counsel:*

WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
Michael E. Ray, *pro hac vice application pending*
Jacob S. Wharton, *pro hac vice application pending*
One West Fourth Street
Winston Salem, North Carolina  27101
Telephone:  (336) 721-3600

*Attorneys for Plaintiffs Hanesbrands Inc. and HBI*
*Branded Apparel Enterprises, Ltd.*

**EXHIBIT A**

**TO**

**COMPLAINT**

Int. Cl.: 25

Prior U.S. Cl.: 39

**United States Patent and Trademark Office**

10 Year Renewal

Reg. No. 274,178
Registered Aug. 19, 1930
Renewal Approved July 10, 1990

## TRADEMARK
## PRINCIPAL REGISTER

## CHAMPION

KAYSER-ROTH CORPORATION (DELA-
WARE CORPORATION)
2303 WEST MEADOWVIEW ROAD
GREENSBORO, NC 27407, ASSIGNEE BY
MESNE ASSIGNMENT, MERGER
WITH AND CHANGE OF NAME
CHAMPION KNITTING MILLS (TEN-
NESSEE CORPORATION) CHATTA-
NOOGA, TN

FOR: HOSIERY, IN CLASS 39 (INT.
CL. 25).

FIRST USE 6-0-1918; IN COMMERCE
6-0-1918.

SER. NO. 71-296,174, FILED 2-18-1930.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Aug. 21, 1990.*

COMMISSIONER OF PATENTS AND TRADEMARKS

EXHIBIT

A-1

**Registered Aug. 19, 1930**                    **Trade-Mark 274,178**

Renewed, August 19, 1950 to Holeproof Hosiery Co., of Milwaukee, Wisconsin.

# UNITED STATES PATENT OFFICE

### CHAMPION KNITTING MILLS, OF CHATTANOOGA, TENNESSEE

#### ACT OF FEBRUARY 20, 1905

Application filed February 18, 1930.  Serial No. 286,174.

# CHAMPION

### STATEMENT

*To all whom it may concern:*

Be it known that the Champion Knitting Mills, a corporation duly organized under the laws of the State of Tennessee, located and doing business in the city of Chattanooga, county of Hamilton, State of Tennessee, at No. 400 East Main Street, in said city, has heretofore adopted and used the trade-mark shown in the accompanying drawing, for HOSIERY, in Class 39, Clothing.

The trade-mark has been continuously used in its business since June, 1918.

The trade-mark is applied or affixed to the goods and the containers by attaching thereto a printed label on which the trade mark is shown.

Your petitioner hereby appoints Edward H. Merritt, Registered No. 3691, Fort Wayne, Indiana, U. S. A., as its attorney to represent it in the Patent Office of the United States, in causing the registration of said trade-mark, with power of substitution, and revocation, to make amendment therein and sign the name of the applicant thereto, to sign the drawing or facsimile, to receive the certificate of registration and do all things necessary to be done in connection with securing the registration of its trade-mark in the United States Patent Office, as fully as it could have done if personally present.

CHAMPION KNITTING MILLS,
By CLYDE WILKINS,
*President.*

EXHIBIT
A-2

**EXHIBIT B**

**TO**

**COMPLAINT**

Int. Cls.: 22, 24, 25 and 26

U.S. Cls.: 2, 39, 40 and 50

**U.S. Patent and Trademark Office**

Reg. No. 1,127,251
Reg. Dec. 4, 1979

## TRADEMARK
### Principal Register



Champion Products Inc. (New York corporation)
115 College Ave.
Rochester, N.Y. 14607

For: Laundry Bags, Also Suitable for Use as Sundry Bags —in Class 22. (U.S. Cl. 2).
First use Mar. 1966; in commerce Mar. 1966.
For: Pennants and Banners —in Class 24. (U.S. Cl. 50).
First use Mar. 1966; in commerce Mar. 1966.
For: Men's and Boys' Football Uniforms, Athletic Shorts, Men's Neckties, Men's Scarves, Football Jerseys, Jackets, Sweat Pants, Sweat Shirts, Warm Up Shirts, Warm Up Pants, Sweat Suits, T-Shirts, One-Piece and Two-Piece Physical Education Uniforms, Pullovers, Tank Tops, Polo Shirts, Hats, Caps, Baby Bibs, Baseball Shirts —in Class 25. (U.S. Cl. 39).
First use Mar. 1966; in commerce Mar. 1966.
For: Heat Transfer Appliques to be Applied to Clothing —in Class 26. (U.S. Cl. 40).
First use Mar. 1966; in commerce Mar. 1966.

Ser. No. 49,119. Filed Apr. 11, 1975.

JOHN C. DEMOS, Supervisory Examiner

EXHIBIT

B

<u>**EXHIBIT C**</u>

**TO**

**COMPLAINT**

Int. Cl.: 25

Prior U.S. Cl.: 39

## United States Patent and Trademark Office

Reg. No. 1,323,337
Registered Mar. 5, 1985

## TRADEMARK
**Principal Register**



Champion Products Inc. (New York corporation)
3141 Monroe Ave.
Rochester, N.Y. 14618

For: ATHLETIC AND PHYSICAL EDUCA-
TION UNIFORMS—NAMELY, T-SHIRTS, KNIT
SPORT SHIRTS, ATHLETIC SHORTS, SWEAT
SHIRTS, SWEAT PANTS, WARM-UP SUITS,
JACKETS AND SWEATERS, in CLASS 25 (U.S.
Cl. 39).

First use Jan. 1, 1968; in commerce Jan. 1, 1968.
Owner of U.S. Reg. No. 1,084,381.

Ser. No. 249,640, filed Feb. 11, 1980.

STEVEN L. CATALANO, Examining Attorney

EXHIBIT

C

**EXHIBIT D**

TO

COMPLAINT

Int. Cl.: 25

Prior U.S. Cl.: 39

**United States Patent and Trademark Office**

Reg. No. 1,915,092

Registered Aug. 29, 1995

## TRADEMARK
### PRINCIPAL REGISTER

*Champion*

SARAMAR CORPORATION (DELAWARE COR-
  PORATION)
CANNON BUILDING, SUITE 145
861 SILVER LAKE BOULEVARD
DOVER, DE 19901

  FOR: CLOTHING, NAMELY HOODED AND
UNHOODED JERSEYS, BATHROBES, SLEEP-
WEAR, COVERUPS, BRAS, PARKAS, AEROBIC
WEAR, NAMELY TOPS AND BOTTOMS,
SWIMWEAR, PANTS, SHORTS, ATHLETIC
UNIFORMS, PHYSICAL EDUCATION UNI-
FORMS, T-SHIRTS, KNIT SPORT SHIRTS, ATH-
LETIC SHORTS, SWEATSHIRTS, SWEAT-
PANTS, WARM-UP SUITS, JACKETS, SWEAT-
ERS, SHIRTS, VESTS, WIND-RESISTANT
CLOTHING, NAMELY TOPS AND BOTTOMS,
REPLICA ATHLETIC JERSEYS, SINGLETS,
TIGHTS, BELTS, HEADBANDS, WRISTBANDS,
UNDERWEAR, UNDERSHIRTS, IN CLASS 25
(U.S. CL. 39).
  FIRST USE 12-31-1963; IN COMMERCE
12-31-1963.
  OWNER OF U.S. REG. NOS. 1,819,014, 1,860,938
AND OTHERS.

  SER. NO. 74-558,724, FILED 8-8-1994.

LESLEY LAMOTHE, EXAMINING ATTORNEY

EXHIBIT
D
tabbies

**EXHIBIT E**

TO

COMPLAINT

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 2,319,994

Registered Feb. 22, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## CHAMPION

CHAMPION PRODUCTS, INC. (NEW YORK CORPORATION)
475 CORPORATE SQUARE DRIVE
WINSTON-SALEM, NC 27105 , BY ASSIGNMENT SARAMAR CORPORATION (DELAWARE CORPORATION) DOVER, DE 19901

FOR: PHYSICAL EDUCATION UNIFORMS, ATHLETIC UNIFORMS, SWEATSHIRTS, SWEATPANTS, SWEATERS, T-SHIRTS, SOCKS, SHORTS, PANTS, JERSEYS, BATHROBES, SLEEPWEAR, COVERUPS, BRAS, PARKAS, TOPS AND BOTTOMS FOR USE IN AEROBICS, SHIRTS, WARM-UP SUITS, JACKETS, VESTS,

WIND RESISTANT PANTS AND JACKETS, REPLICA ATHLETIC JERSEYS, SINGLETS, TIGHTS, BELTS, HEADBANDS, WRISTBANDS, UNDERWEAR, HATS, CAPS, TANK TOPS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 12-31-1952; IN COMMERCE 12-31-1952.

OWNER OF U.S. REG. NOS. 274,178, 1,860,938 AND OTHERS.

SER. NO. 75-197,749, FILED 11-12-1996.

ANDREW A. ROPPEL, EXAMINING ATTORNEY

EXHIBIT

E

tabbies

**<u>EXHIBIT F</u>**

**TO**

**COMPLAINT**

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 3,140,617
Registered Sep. 5, 2006

## TRADEMARK
### SUPPLEMENTAL REGISTER

# SUPER HOOD

SARA LEE GLOBAL FINANCE, L.L.C. (DELA-
WARE LTD LIAB CO)
1000 E. HANES MILL RD.
WINSTON-SALEM, NC 27105

FOR: SWEATSHIRTS, SWEATPANTS, JACKETS,
IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 8-2-2002; IN COMMERCE 8-2-2002.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-479,312, FILED P.R. 9-7-2004; AM. S.R.
5-18-2006.

CARRIE ACHEN, EXAMINING ATTORNEY

EXHIBIT

F