**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x
                  :

**HANESBRANDS INC. and HBI BRANDED**   :
**APPAREL ENTERPRISES, LLC,**        :
                  :
                  :
           **Plaintiffs,**    :
                  :
     **- against -**        :  **Civil Action No. 08-cv-0545 (VM)**
                  :
**METRO SPORTS (d/b/a PLAYERS SPORTS, d/b/a**   :
**HOT DOT, d/b/a HIP HOP SPORTSWEAR); HOT**   :
**DOT FASHION, INC.; HIP HOP SPORTSWEAR**   :
**INC.; MICHAEL FASHIONS INC. (d/b/a**     :
**MICHAEL FASHION); LONDON BOY**       :
**SPORTSWEAR, LTD. (d/b/a LONDON BOY);**   :
**TRANDZ N.Y., CORP. (d/b/a OCTANE); OCTANE**  :
**NYC INC. (d/b/a OCTANE); FLASH SPORTS,**   :
**INC.; 104TH ST. FASHION INC. (d/b/a 104**   :
**STREET FASHIONS, d/b/a 104 FASHIONS); F.T.C.** :
**FASHION; various JOHN and JANE DOES, and**  :
**XYZ COMPANIES (UNIDENTIFIED),**     :
                  :
           **Defendants.**   :
-------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

      Hanesbrands, Inc. and HBI Branded Apparel Enterprises, LLC ("Plaintiffs") have moved

for a default judgment against all remaining defendants. Plaintiffs submit a Proposed Default

Judgment herewith.

**I.      BACKGROUND**

      Plaintiffs commenced this action on January 22, 2008 by filing a Summons and

Complaint. (Wharton Aff., ¶ 2) Plaintiffs base this action on defendants' sale of counterfeit

sweatshirts that are replicas of Plaintiffs' CHAMPION SUPER HOOD sweatshirts. Specifically,

the Complaint alleges federal trademark infringement and counterfeiting pursuant to 15 U.S.C.

§§ 1114(1) and 1116 (*see* Wharton Aff., ¶ 3, Ex. A, Count I); federal unfair competition and

false designation of origin pursuant to 15 U.S.C. § 1125(a) (*Id.*, Count II); federal trademark

dilution pursuant to 15 U.S.C. § 1125(c) (*Id.*, Count III); trademark infringement and unfair

competition pursuant to New York General Business Law § 360-o, New York common law, and

the common law of other states (*Id.*, Count IV); dilution and injury to business reputation

pursuant to New York General Business Law § 360-l (*Id.*, Count V); deceptive acts and practices

pursuant to New York General Business Law §§ 349 and 350, New York common law, and the

common law of other states (*Id.*, Count VI); and common law unjust enrichment (*Id.*, Count VII).

(Doc. 1)

     The pertinent backgrounds facts are set forth in the Complaint. (*See* Wharton Aff., ¶ 3,

Ex. A at ¶¶ 1-42) In particular, Plaintiffs allege that defendants have offered for sale and sold

sweatshirts bearing counterfeits of Plaintiffs' CHAMPION, "C" Logo, and SUPER HOOD

trademarks. (Wharton Aff., ¶ 3, Ex. A, ¶¶ 34-42; Wharton Aff., ¶ 4, Ex. B (Heller Aff., ¶¶ 14,

16, Exs. D (counterfeit) and E (authentic)))[1]. Plaintiffs submit there is one type of good sold by

defendants, sweatshirts, and that each sweatshirt bears at least three trademarks registered on the

Principal Register with the United States Patent and Trademark Office ("USPTO"); two

CHAMPION marks (U.S. Trademark Registration Nos. 1,915,092 and 2,319,994) and the "C"

Logo (U.S. Trademark Registration No 1,127,251).[2] (Wharton Aff., ¶ 3, Ex. A, ¶¶ 24, 34)

     All defendants were served on January 30, 2008 by personal service of the Summons and

Complaint. (Wharton Aff., ¶ 5) Proof of service was filed on February 11 and February 28,

2008. (Wharton Aff., ¶ 9) (Docs. 12-17 and 19-21).

---

[1] Exhibits D and E to the Heller Affidavit were filed with the Clerk's Office on February 15, 2008 and are exemplars of a counterfeit and authentic SUPER HOOD sweatshirt.

[2] As discussed below, statutory damages are not allowed for marks registered on the USPTO's Supplemental Register, such as with Plaintiffs' SUPER HOOD mark. Nonetheless, defendants' have counterfeited this mark as well as the CHAMPION and "C" Logo marks.

On February 5, 2008 Plaintiffs filed a Motion for Leave to File a First Amended Complaint, attaching the proposed First Amended Complaint as Exhibit A (Doc. 4) and a Notice of Dismissal (Doc. 10) dismissing one defendant (Metro Sports, Inc.) without prejudice.[3]  The Proposed First Amended Complaint is identical to Plaintiffs' original Complaint except for dropping Metro Sports, Inc.  (Wharton Aff., ¶¶ 7-8)  All defendants were served with copies of these papers.  (Wharton Aff., ¶ 8)  Although Metro Sports, *Inc.* was dismissed, the defendant doing business as "Metro Sports" was not dismissed.[4]  Therefore, the remaining defendants are as follows:[5]

1. Metro Sports (d/b/a Players Sports, d/b/a Hot Dot, d/b/a Hip Hop Sportswear)

2. Hot Dot Fashion, Inc.

3. Hip Hop Sportswear, Inc.

4. Michael Fashions Inc. (d/b/a Michael Fashion)

5. London Boy Sportswear, Ltd. (d/b/a London Boy)

6. Trandz N.Y., Corp. (d/b/a Octane)

7. Octane NYC Inc. (d/b/a Octane)

8. Flash Sports, Inc.

9. 104th St. Fashion Inc. (d/b/a 104 Street Fashions)

These named defendants are retail stores located in Manhattan or the Bronx that sell, among other items, apparel.  (Wharton Aff., ¶ 17)  Some of the defendants appear to be interrelated but without discovery Plaintiffs have not been able to ascertain the connection, if

---

[3] Plaintiffs base the Motion for Default Judgment on the original Complaint on which the Clerk's Office has issued a Certificate of Default.

[4] Metro Sports also apparently does business as Players Sports, Hot Dot, and Hip Hop Sportswear.  (Wharton Aff., ¶ 11-13)

[5] Plaintiffs requests that the John and Jane Does and XYZ Companies not be dismissed from this action at this point. Although unlikely, Plaintiffs may yet still obtain information from the named defendants that leads to the identification of the source of the counterfeit goods.  If no such information is available prior to entry of final judgment, Plaintiffs will notify the Court and dismiss the John and Jane Doe and XZY Companies defendants.

any, between certain defendants.  (*See* Wharton Aff., ¶¶ 11-15)  There is clearly a connection between Metro Sports, Hip Hop, and Hot Dot and a pattern of using various alias.  (*See* Wharton Aff., ¶ 22, Ex. H at ¶ 3 (employee of Metro admits stores are commonly owned))  None of the defendants are infants or incompetent.  (Wharton Aff., ¶ 18)

Defendants' due date to answer or otherwise plead to Plaintiffs' Complaint was February 19, 2008.  (Wharton Aff., ¶ 10).  However, Defendants failed to answer or otherwise plead.  (*Id.*).

On March 25, 2008, Plaintiffs obtained a Certificate of Default, based on the original Complaint, as to all remaining named defendants.  (Wharton Aff., ¶ 18, Ex. D).  Plaintiffs mailed the Certificate of Default to all defendants on March 31, 2008.  (Wharton Aff., ¶ 19)

Plaintiffs served notice of this motion by mailing a copy of the Notice of Motion of Default Judgment, Motion for Default Judgment, Plaintiffs' Memorandum in Support of Motion for Default Judgment, the Affidavit of Jacob Steven Wharton, and all exhibits thereto to the last known mailing address of each named defendant, even if the addresses were the same.  (Wharton Aff., ¶ 16)

On April 11, 2008, Plaintiffs provided the Court a status report indicating that Plaintiffs intended to move for default judgment.  A copy of that letter was mailed to the last known address for each defendant.  (Wharton Aff., ¶ 23, Ex. I)

Plaintiffs have made repeated efforts to resolve this case expeditiously, economically, and without needless judicial intervention by requesting information about the source of the counterfeit goods.  (Wharton Aff., ¶ 20).  For example, Plaintiffs served a letter with the Summons and Complaint asking Defendants to contact Plaintiffs' counsel to discuss this matter.  (Wharton Aff., ¶ 20, Ex. F)  Although several of the Defendants called Plaintiffs' counsel, they have, except for one defendant, refused to provide information about the source of the goods, the

number of counterfeit goods sold, or the documents concerning defendants' purchase of the goods. (Wharton Aff., ¶ 21). Plaintiffs enlisted a private investigator to serve the Summons and Complaint and assist with collecting information and to determine whether defendants' counterfeiting efforts were continuing. (Wharton Aff., ¶ 22, Exs. G and H) Unfortunately, except for Flash Sports, defendants have not provided the simple information regarding the identity of the person or entity from whom they obtained counterfeit goods and copies of any related paperwork. (*Id.*, ¶ 21) And, it appears the source identified by Flash Sports' likely supplied Flash Sports with authentic sweatshirts. However, Flash Sports also reported buying Super Hood sweatshirts from a man who stopped in the store. (*Id.*) Had defendants been at all responsive to Plaintiffs' efforts and to the process of this Court, Plaintiff would have incurred only nominal attorney fees and costs. Given defendants' non-responsiveness and blatant disregard for the judicial process, Plaintiffs have incurred additional costs related to investing the source of the counterfeit goods and additional attorneys' fees related to following up with the defendants and the preparation and filing of this motion.

## II. THE COURT SHOULD ENTER DEFAULT JUDGMENT AS TO ALL RELIEF REQUESTED IN PLAINTIFFS' COMPLAINT INCLUDING ATTORNEYS' FEES AND COSTS.

The Court should enter default judgment as to all relief sought because Plaintiffs have satisfied their burden pursuant to Federal Rule of Civil Procedure 55(b)(2), Local Civil Rule 55.1 and 55.2, and the Court's Individual Practices regarding default judgment. Accordingly, Plaintiffs request entry of default judgment and that the Court accept as true all of the facts alleged in the Complaint. *See Ahava (USA), Inc. v. J.W.G., Ltd.*, 286 F. Supp. 2d 321, 323 (S.D.N.Y. 2003) (Marrero, J.) (citing *Au Bon Pain Corp. v. Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)) (upon default the court accepts as true all facts alleged in the complaint except those relating the amount of damages).

**A.    This Court Has Jurisdiction Over The Claims In This Action.**

This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121(a), which states that the district courts of the United States "shall have original jurisdiction … of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."   This Court also has jurisdiction over this action under 28 U.S.C. § 1331, 1338(a), and 1338(b), which provide, respectively, that the district courts have original jurisdiction over actions arising under laws of the United States, federal laws regarding trademarks, and federal laws regarding unfair competition.   (Wharton Aff., ¶ 24)   The Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

**B.    This Court Has Personal Jurisdiction Over The Defendants.**

This Court has personal jurisdiction over the defendants based on their selling of counterfeit goods in Manhattan, the Bronx, and in the State of New York.   (Wharton Aff., ¶¶ 17, 25)   *Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436-37 (S.D.N.Y. 1996) (Stein, J.) ("Personal jurisdiction pursuant to section [N.Y. C.P.L.R.] 302(a)(1) may be satisfied with proof that just one transaction occurred in New York as long as defendants' activities were purposeful and substantially related to plaintiffs' claim.") (citations omitted).   Here, defendants sold at least one counterfeit sweatshirt in this judicial district and thus in the State of New York.   (*See* Wharton Aff., ¶ 3, Ex. A, ¶ 41; Wharton Aff., ¶ 12, Ex. C (Martinez Aff., ¶ 15, Ex. J), Ex. M (Melo Aff., ¶3), Ex. N (Ortiz Aff., ¶ 5); Wharton Aff., ¶ 25) Furthermore, Plaintiffs have also made a prima facie showing that personal jurisdiction exists over the defendants pursuant to N.Y. C.P.L.R. § 302(a)(2) on the grounds that they committed a

tortious act within the State of New York (trademark infringement and counterfeiting) and the asserted causes of action arose from that act. (Wharton Aff., ¶ 3, Ex. A, ¶¶ 34, 41)

### C.    Plaintiffs Are Entitled to Injunctive Relief.

Plaintiffs seek a permanent injunction to prevent further counterfeiting, trademark infringement, and other unfair competition alleged in Plaintiffs' Complaint. "To obtain a permanent injunction, [the plaintiffs] must demonstrate (1) actual success on the merits, and (2) irreparable harm." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003) (Marrero, J.). In this case, Plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability. *Pitbull Productions, Inc. v. Universal Netmedia, Inc.*, Civil No. 07-1784, 2007 WL 3287368, at *6 (S.D.N.Y. Nov. 7, 2007) (Gorenstein, M.J.); *Dunkin Donuts, Inc. v. Peter Romanofsky, Inc.*, Civil No. 05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (Azrack, M.J.).

Irreparable harm in a trademark infringement case is "established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Pitbull Prods.*, 2007 WL 3287368, at *6 (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir.1987)). Given the fact that the Plaintiffs' CHAMPION marks have worldwide renown, the likelihood that a consumer would confuse the defendants' counterfeit products with the Plaintiffs' products is very high, particularly since the defendants' are virtually identical to Plaintiffs' products. (Wharton Aff., ¶ 4, Ex. B (Heller Aff., ¶ 15) (Doc. 6-2)) ("The counterfeit sweatshirts differ from authentic goods in only small details, making it difficult to the untrained eye to distinguish counterfeit and authentic goods."). Hence, Plaintiffs have shown irreparable harm, and request that a permanent injunction be entered as set forth in the accompanying Proposed Order.

**D.      Plaintiffs Are Entitled To Statutory Damages.**

Under the Lanham Act, 15 U.S.C. §§ 1117(a) and (b), Plaintiffs can recover:  (1) the Defendant's profits; (2) any damages sustained by the Plaintiff; and (3) the costs of the action. In addition, the Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, for the use of a counterfeit mark in connection with goods or services.  *Gucci Am., Inc. v. Myreplicahandbags.com*, Civil No. 07-2348, 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008) (Koeltl, J.) (citing 15 U.S.C. § 1117(c)).   Here, Plaintiffs elect to receive statutory damages under 15 U.S.C. § 1117(c).

Statutory damages may be awarded in the amount of:

(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (2006).  The statute "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just."  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (Marrero, J.) (quoting *Louis Vuitton Malletier v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002) and 15 U.S.C. § 1117(c)).  The Courts are not without aid in this regard as similar provisions exist under the Copyright Laws:

the courts have found some guidance in the case law of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement. *See, e.g., Louis Vuitton*, 211 F. Supp. 2d at 583; *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the

copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir.1986).

*Gucci Am.*, 315 F.Supp.2d at 520.

As to the first factor, "the expenses saved and the profits reaped" by the counterfeiters, Plaintiffs cannot provide an exact figure due to the lack of discovery and the defendants' failure to cooperate.[6]  However, Plaintiffs have established, by affidavit and by default, that at least one counterfeit was purchased from addresses where each defendant does business.  (*See* Wharton Aff., ¶ 3, Ex. A, ¶ 41; Wharton Aff., ¶ 12, Ex. C (Martinez Aff., ¶ 15, Ex. J), Ex. M (Melo Aff., ¶ 3), Ex. N (Ortiz Aff., ¶ 5)).  In addition, Plaintiffs have established that certain defendants had between approximately 10 and 100 counterfeit items for sale.  (*See* Wharton Aff., ¶ 22) Plaintiffs submit that it is possible that each defendant had approximately 100 sweatshirts and thus approximately 1000 items were possibly sold by defendants.  In the situation where defendants are smaller retail outlets, as is the case here, stock is constantly changing and merchandise is purchased off trucks, it is difficult for plaintiff to establish the extent of defendants' sale of counterfeit merchandise.  Again, defendants' failure to participate in the litigation process and discovery prevented Plaintiffs from determining these figures with certainty.  As to the second factor, "revenues lost by plaintiff," again Plaintiffs cannot provide an exact figure due to the lack of discovery.  However, certainly the sale of every counterfeit sweatshirt resulted in lost profits for Plaintiffs.

As to the third factor, the value of the trademark, Plaintiffs alleged, and thus the defendants have admitted by way of defaulting, that the CHAMPION Marks are famous and

---

[6] Plaintiffs sought expedited discovery on these issues in its January 22, 2008 submissions to the Court.  (*See* Wharton Aff., ¶ 28).

have come to represent enormous good will.  (Wharton Aff., ¶ 3, Ex. A at ¶ 33)  Thus, the CHAMPION Marks that defendants counterfeited are of great value.  Moreover, even the sales of only a few counterfeit items can severely damage Plaintiffs' reputation. The presence of even a limited quantity of counterfeit product on the market may cause consumers to steer away from buying Plaintiffs' products because of the uncertainty as to whether they are getting the original or counterfeit goods.  The damage to Plaintiffs' reputation from even a few counterfeit products cannot be measured in monetary terms and is difficult to undo.

The fourth, fifth, and seventh factors involve assessing whether defendant acted willfully and assessing a "deterrent effect" as to defendants and as to others.  When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer.  *Rodgers v. Anderson*, Civil No. 04-1149, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.); *Tiffany v. Luban*, 282 F.Supp.2d 123, 124-25 (S.D.N.Y.2003) (Marrero, J.).  Where "a defendant is shown to have acted willfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others."  *Rolex Watch U.S.A., Inc. v. Jones*, Civil No. 99-2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.),  adopted by Judge Cote on June 18, 2002.   Here, defendants' willful infringement warrants a punitive component to the statutory damages award.  In addition, the importance of discouraging others than defendants must also weigh heavily in the analysis.  Fly-by-night counterfeiters pop-up on street corners in major cities around the country and expect that, if they are caught, there will be little in the way of consequences.  The deterrent effect against others besides the defendants is a significant factor in assessing the proper damage award.

As to the sixth factor, Plaintiffs have made repeated efforts to resolve this case expeditiously, economically, and without needless judicial intervention by requesting information about the source of the counterfeit goods.  Plaintiffs' efforts are detailed in the Wharton Affidavit at ¶ 20.  Unfortunately, Defendants have not cooperated.  (*Id.*)

In determining statutory damages, judges have issued awards below the maximums available on the basis of per-mark-per-type-of-goods analyses.  *See Pitbull Prods.*, 2007 WL 3287368, at *4 (S.D.N.Y. Nov. 7, 2007) (Gorenstein, M.J.) (awarding $250,000 per mark); *Chanel, Inc. and Louis Vuitton Malletier v. Craddock*, Civil No. 05-1593, 2006 WL 1128733, at *1 (D.N.J. Apr. 27, 2006) (Ackerman, J.) (granting plaintiffs' request for statutory damages of $100,000 per mark per type of merchandise); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, Civil No. 03-2132, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (Daniels, J.) (awarding statutory damages of $125,000 per infringed mark); *Rodgers*, 2005 WL 950021, at *4 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.) (awarding $250,000 for one mark); *Tiffany*, 282 F.Supp.2d at 125 (S.D.N.Y. 2003) (Marrero, J.) (awarding a total sum of $550,000 for 28 separate counterfeit items, each of which infringed at least four trademarks); *Rolex Watch*, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.) (awarding $500,000 for nine Rolex marks and $100,000 for one Ralph Lauren mark), adopted by Judge Cote on June 18, 2002.

In this case, nine separate corporate defendants have defaulted on allegations of selling sweatshirts that bear counterfeit replicas of three trademarks registered with the USPTO on the Principal Register.[7]  The record shows that at least one type of good, a sweatshirt, bearing the counterfeit marks was sold at addresses where defendants conduct business.  (*See e.g.,* Wharton

---

[7] Plaintiffs are only entitled to statutory damages for trademarks registered on the Principal Register.  15 U.S.C. § 1116(d)(1)(B)(i) (counterfeit mark means "a counterfeit of a mark that is registered on the *principal register* in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; .…") (emphasis added).

Aff., ¶ 12, Ex. C (Martinez Aff., ¶ 15, Ex. J))   Because of defendants' default, defendants' infringement of Plaintiffs' registered marks is considered willful.  *See Myreplicahandbag.com*, 2008 WL 512789, at *3 ("When a defendant had defaulted, then by virtue of its default it is deemed to be a willful infringer.") (citations omitted).  In view of the willful infringement and statutory awards in similar cases, Plaintiffs submit a statutory award of $10,000 per registered mark per type of good is appropriate ($10,000 x 3 marks x 1 type of good), totaling $30,000 against each of the nine corporate defendants for a total of $270,000.  Taking into account the defendants' failure to respond to this action, the willfulness of their conduct, the deterrent effect a damages award would have on both the defendants and others, as well as a punitive component, $10,000 per mark is reasonable.  *Pitbull Prods.*, 2007 WL 3287368, at *4.  Courts have awarded similar and even greater damages in other cases in which there was little information as to the defendants' infringement.  *See Rodgers*, 2005 WL 950021, at *4.

Additionally, defendants should bear the burden of their having sold products apparently obtained through unconventional channels.  *Duty Free Apparel*, 315 F. Supp. 2d at 521 ("'Selling products acquired outside the customary chain of retail distribution and without the usual authenticating documentation' is a 'high risk business'") (citing *Gucci Am., Inc. v. Daffy's Inc.*, 354 F. 3d 228, 245 (3d Cir. 2003)).  Defendants' apparent lack of documentation regarding the counterfeit goods can only be held against them as "[t]he Second Circuit has held that a counterfeiter who keeps poor records 'must bear the burden of uncertainty' in determining a damages award."  *Duty Free Apparel*, 315 F. Supp. 2d at 521 (*citing Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-73 (2d Cir.1985)); *see also, Polo Ralph Lauren, L.P. v. 3M Trading Co.*, Civil No. 97-4824, 1999 WL 33740332, at *4 (S.D.N.Y. Apr. 19, 1999) (Martin, J.) ("It is often the case that 'counterfeiters' records are nonexistent, inadequate, or

deceptively kept in order to willfully deflate the level of counterfeiting activity engaged in, making proving actual damages in these cases extremely difficult if not impossible.") (citation omitted).

Counterfeiting is a widespread problem and the small nature of defendants' business is not an excuse to permit their counterfeit activity to go unpunished.  In this case, defendants have defaulted and they must accept the consequences of their default.  The willful and intentional nature of defendants' counterfeiting is established.  The enormous good will of Plaintiffs' marks is established.  The marks are admittedly famous and have been extensively advertised throughout the United States.  Plaintiffs' valuable reputation is also established.  In this situation, the small amount of sales that plaintiff has been able to document at this stage should not be a reason to limit the statutory damage award.

## III.    PLAINTIFFS  ARE  ENTITLED  TO  RECOVER  THEIR  COSTS  AND ATTORNEY FEES.

Attorneys' fees may be awarded under 15 U.S.C. § 1117(c).  *See, e.g., Rodgers*, 2005 WL 950021, at *4 (S.D.N.Y. Apr. 26, 2005) (Peck, M.J.) (citing cases).[8]  In addition, attorneys' fees are available in "exceptional cases":

> The Lanham Act authorizes the award of attorney's fees to prevailing parties in "exceptional cases," 15 U.S.C. § 1117(a), which we have understood to mean instances of "fraud or bad faith," *Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir.1993) (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1004 (9th Cir.1985)), or "willful infringement," *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir.1995).

---

[8] Plaintiffs note that *Rodgers* identifies *Duty Free Apparel*, 315 F. Supp. 2d at 522 (Marrero, J.), as refusing to award attorneys' fees under 15 U.S.C. § 1117(c).  However, the decision to deny an award of attorneys' fees in *Duty Free Apparel* turned on the holding that the plaintiff was already adequately compensated by an award of statutory damages, not whether an award of statutory damages under 15 U.S.C. § 1117(c) precludes an award of attorneys' fees.

*See Louis Vuitton Malletier v. WhenU.com*, Civil No. 05-1325, 2007 WL 257717, at *6 (S.D.N.Y. Jan. 26, 2007) (Kaplan, J.) (citing *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir.2003)).

An award of attorney fees is appropriate in exceptional cases under 15 U.S.C. § 1117(a) where a defendant's infringement was willful. Here, defendants are willful infringers due to their default. *Rodgers*, 2005 WL 950021, at *3. Thus an award of attorneys' fees under 15 U.S.C. § 1117(a) is appropriate.

Attached as Exhibits J and K to the Affidavit of Jacob Steven Wharton are the invoices and time records of Morgan & Finnegan, L.L.P. and Womble Carlyle Sandridge & Rice, PLLC, reflecting both fees and disbursements incurred in this matter. (Wharton Aff., ¶¶ 26-27) These records document fee requests that are reasonable for this case in this jurisdiction. The hourly rates appropriately vary based on each attorney's standing and experience. *See Sara Lee*, 36 F. Supp. 2d at 171. The amount of work was not excessive under the circumstances, in light of the following considerations: the attorneys' ultimate success and the need for time-consuming investigation of the defendants' operations. *Id.*

Plaintiffs also request an award of all reasonable costs incurred in this matter pursuant to 15 U.S.C. § 1117(a). Attached as Exhibit L to the Affidavit of Jacob Steven Wharton is a table of fees and disbursements from Morgan & Finnegan, L.L.P. and Womble Carlyle Sandridge & Rice, PLLC which total $162,605.68 through March 31, 2008. The fees total $154,510.99.[9] The disbursements total $8,094.69 and include the $350.00 court filing fee for commencing the action, taxable as costs pursuant to 28 U.S.C. § 1920, $787.84 for computer-assisted legal

---

[9] The services rendered by Morgan Finnegan, LLP and Womble Carlyle Sandridge & Rice, PLLC included the preparation, delivery to the court, and service on defendants of a motion for ex parte seizure, motion to show cause why a temporary restraining order should not issue, motion for temporary restraining order, motion for expedited discovery and preservation, motion for secrecy, and proposed orders accompanying each motion. (Wharton Aff., ¶ 28)

research, and costs for serving and investigating the defendants.  An award for such costs is reasonable under the circumstances of this case.  *See Ahava*, 286 F. Supp. 2d at 325 (awarding costs for outside investigator, costs related to LEXIS charges, other miscellaneous expenses, as well as the Court filing fee).  Additional expenses incurred by the preparation and submission of this motion and memorandum will be submitted prior to entry of final judgment.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request entry of the proposed default judgment filed concurrently herewith and an award of costs and attorney fees as set forth in the proposed order.

Dated:  New York, New York                          MORGAN & FINNEGAN LLP
        April 21, 2008

                                                    By:  /s/ Jacob S. Wharton
                                                         Gerald A. Haddad
                                                         Joseph Colin Foley
                                                         Danielle Tully
                                                         Three World Financial Center
                                                         New York, New York  10281-2101
                                                         Telephone: (212) 415-8700

*Of Counsel:*

WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
Michael E. Ray, *pro hac vice*
Jacob S. Wharton, *pro hac vice*
One West Fourth Street
Winston Salem, North Carolina  27101
Telephone:  (336) 721-3600

                                                    *Attorneys for Plaintiffs Hanesbrands Inc. and*
                                                    HBI Branded Apparel Enterprises, Ltd.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he has this day caused a copy of the foregoing

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

to be served by ECF and First Class Mail upon the Defendants at the locations set forth below:

Metro Sports, Inc.                      London Boy Sportswear, Ltd.
3542 Broadway                         2908 Third Avenue
New York, NY 10031                    Bronx, NY 10455
(Signage = Hot Dot)                   (Signage = London Boy)

Metro Sports, Inc.                      London Boy Sportswear, Ltd.
565 145th Street                       1027 Southern Blvd
New York, NY 10031                    Bronx, NY 10459
(No Signage)

Metro Sports, Inc.                      104th Street Fashion Inc.
2946 Third Avenue                     1887 Third Avenue
Bronx, New York 10455                 New York, NY 10029
(Signage = Sportswear)

F.T.C. Fashion                         Trandz N.Y. Corp.
3663 Broadway                         560 Melrose Avenue
New York, NY 10031                    Bronx, NY 10455
(Signage = F.T.C. Fashion)            (Signage = Octane)

Michael Fashions, Inc.                  Octane N.Y. Corp.
2936 Third Avenue                     560 Melrose Avenue
Bronx, NY 10455                       Bronx, NY 10455
(Signage = Michael Fashion)           (Signage = Octane)

Flash Sports, Inc.
16 West 125th Street
New York, NY 10027
(Signage = Flash Sports)

Dated: April 21, 2008                       /s/  Jacob Steven Wharton
                                            Jacob Steven Wharton